Bell, J.,
concurring. The Court of Appeals distinguished this case from the Western Reserve Academy case on the basis that in that case the property for which exemption was sought was used as housing for permanent employees of the institution, whereas in this case the property is used as temporary housing only for those who are availing themselves of the training facilities offered by the plaintiff.
I do not believe the distinction to be a sound one. It is a well known fact that some institutions of learning own valuable rental properties in the heart of Rockefeller Center in the city of New York. One of the large hotels in the city of Columbus is owned by a church. Tenants in office buildings frequently *286 change. Guests in hotels are usually transient. Yet the temporary nature of the occupancy of such facilities owned by charitable institutions would not seriously be considered as a basis for exempting such facilities from the payment of real estate taxes.
It may undoubtedly be said that in such a situation there would be no question about a charitable use of the property. Operation of an office building or hotel is a commercial enterprise and not a use for charitable purposes, and, therefore, it is immaterial whether the tenants are permanent or temporary.
I am, then, led to the consideration of the question of whether the fact of training which is offered to interns and residents by the hospital program is such as to bring this case within the rule of Aultman Hospital Assn. v. Evatt, Tax Commr., 140 Ohio St., 114, which exempted from taxation the quarters provided for student nurses by a hospital which operated a schoool of nursing.
There is, of course, no statutory requirement in Ohio of either an internship or residency prior to engaging in the practice of medicine. And, it is a matter of general knowledge that many medical school graduates take their “state board” either prior to or during an internship. New physicians, however, begin their actual practice without an internship, largely because of the additional benefits accruing to them from the opportunity of practical experience under the supervision of a hospital staff. The same may be said of the resident physician. For the physician who would specialize in surgery, for instance, to have the opportunity of three years of practical experience under the tutelage of an eminent surgeon is an advantage calculated to pay future dividends far in excess of those given up by delaying his practice for three years.
It cannot be gainsaid that there is a reciprocal advantage to the hospital which provides this training ground for both intern and resident. Were the services of interns and residents not available to staff emergency rooms, take case histories, make preliminary examinations and perform the other patient-care services which they perform, the hospitals would be required to hire considerably more personnel at a considerably higher cost. Competition for the services of interns and residents is, there *287 fore, rather keen among hospitals. And, as an inducement, rent-free living quarters are frequently offered.
Hospitals are not considered charitable institutions because they provide training programs for physicians and surgeons. If this were the basis for the charitable institution classification, then it could be said with equal logic that a law firm which accepts a law school graduate under the internship plan, suggested from time to time in the Ohio State Bar Association as a part of the training program for lawyers, is likewise a charitable institution. Hospitals are charitable institutions because of the services furnished to the public rather than because of those furnished to the members of a profession. O’Brien, Treas., v. Physicians Hospital Assn., 96 Ohio St., 1; Aultman Hospital Assn. v. Evatt, Tax Commr., supra.
These services furnished to the public are not made available because there is an intern-resident program. The hospital could furnish the same services without such a program, albeit at the higher operating cost to itself and a consequent higher cost to the paying patient. The public undoubtedly benefits indirectly from a hospital having such a program, by virtue of better trained physicians and surgeons. But such a benefit I consider too remote to remove from the tax list the facilities used by those participating in the program.
Much of the above can, of course, be said of the hospital which operates a school of nursing and utilizes student nurses in its hospital operation. One distinction appears, however, in that a student nurse pays a fee to the hospital for her training (a fee which is probably far less than the cost to the hospital of providing her education), whereas the intern receives a stipend of $100 a month from the hospital. (The record here is silent as to whether the resident receives any such stipend.)
In the Aultman case, the witness for the hospital testified:
“It is impossible for us to conduct the hospital without student nurses. We cannot take care of patients without them # # # >>
The only testimony in this record, from the hospital administrator and which is as follows, indicates that a hospital can operate without an intern-resident program:
“Q. Mr. Konold, in your opinion, are all those various *288 services by externs, interns, and residents necessary or desirable to the operation of an efficient, modern hospital? A. Oh, yes, indeed.
“Q. Is it the same pattern followed by other hospitals in this area? A. All but St. Ann’s I believe. All of them have the same pattern.”
As I have pointed out, from an economic standpoint the intern-resident program is unquestionably desirable. As the witness above quoted pointed out, such a program is not essential since one Columbus hospital apparently operates without such a program.
I am of the opinion, therefore, that the element of training which is inherent in the intern-resident tradition is not such as will take the living quarters furnished to married interns and residents out of the rule laid down by this court in the Western Reserve Academy case.
It is a truism that, taxation being the rule and exemption the exception, tax exemption statutes are strictly construed. Every property which is removed from the tax list increases the tax burden on other property. As the Board of Tax Appeals said in its entry, quoted by this court in the Beerman case, supra, “if applicant desires to dispense a charity it ought to do so without enforced contribution from other taxpayers.” I do not believe that other taxpayers should be forced to subsidize a program of training for physicians.